```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ALABAMA
                   MIDDLE DIVISION

CONNIE B. MEANS,            }
                            }
     Plaintiff,             }
                            }
          v.                }    CIVIL ACTION NO.
                            }    03-AR-0188-M
NORTHEAST ALABAMA PROPERTIES,}
INC., d/b/a DAD'S BAR-B-QUE,}
INC.,                       }
                            }
     Defendant.             }
```

### MEMORANDUM OPINION

Before the court is the summary judgment motion of defendant Northeast Alabama Properties, Inc. d/b/a Dad's Bar-B-Que ("Dad's"). In December 2002, plaintiff, Connie Means ("Means"), filed this action against Dad's in the Circuit Court of Etowah County Alabama, alleging violations of the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). Means appended a state law claim against Dad's owner, Dan Divine ("Divine"), for alleged breach of contract. Dad's and Divine removed the case to this court on the basis of the existence of a federal question under 28 U.S.C. § 1331. The court subsequently remanded the separate state law claim against Divine under 28 U.S.C. § 1441(c), so that only the ADA and Title VII claims against Dad's remain to be decided on summary judgment.

Means advances five theories under which Dad's allegedly

violated the ADA: 1) limiting and classifying a disabled person in a way that adversely affects her opportunities and status, 2) discriminatory termination, 3) refusal to allow a reasonable accommodation, 4) harassment on account of her disability, and 5) retaliation by refusing her the right to work with a reasonable accommodation.

As for Means' Title VII theories, Means asserts that Divine harassed her and other female employees and that such harassment created a hostile work environment. Means also alleges that Dad's discriminated against her based on her gender when it terminated her employment.

*Summary Judgment Facts*

Means has been employed in the food service industry for over fifteen years, gaining her first managerial experience at a Mississippi Sonic Drive-In restaurant ("Sonic") in about 1987. Decl. of Means, p. 2. In 2000, Means moved to North Carolina to accept a position with a Sonic franchisee there. Means started in North Carolina as a supervisor of several Sonic stores, but at some point her job was either "reorganized" or she was demoted such that she had become a manager over only one store at the time she left to work for Dad's. Decl. of Means, p. 2; Def. Ex. 9.

In 2001, Means and Divine agreed that Means would come to work for Dad's as a management trainee, with the understanding that eventually Means would become general manager and a partner in

2

Dad's. Means Dep. p. 174, 292; Def. Ex. 16. Means began working for Dad's as a manager-in-training on October 29, 2001. Divine Dep. p. 48; Def. Ex. 16. On May 21, 2002, Means called a meeting with Divine to discuss her job performance and what she perceived to be Divine's unfair treatment of her. During the course of this meeting, Divine terminated Means. Divine Dep. 79-80.

Some time later, Divine contacted Means, and the two met to discuss the possibility of her returning to work for Dad's. Means returned to work as a probationary employee on June 5, 2002. Conflict between Divine and Means resumed, and on August 29, 2002, Divine told Means that she had thirty days to find another job. Divine Dep. 132. Before the end of this thirty day period, however, Divine terminated Means on September 9, 2002.

Dad's argues that on both occasions it fired Means, it did so on account of her poor job performance and/or her inability to work well with other employees. Dad's presents various affidavits and testimony that support its position. Means, on the other hand, argues that Dad's fired her because of her hearing loss, because she is female, and because she complained of discrimination. Means presents sworn declarations detailing various derogatory remarks Divine allegedly made toward her that relate to her gender and her hearing loss.

Means' alleged disability stems from hearing loss she suffered due to firing guns without ear protection at a target range

3

sometime in 1992. Means Decl. p. 1. She has consulted different physicians on two occasions regarding her hearing, and the evidence indicates that Means does have a hearing deficiency in her right ear. There is a fact issue as to the degree of this deficiency, although it appears from her medical records to be at least 40% in relation to high frequency sounds.

On September 3, 2002, without being represented by counsel, Means filed an EEOC charge[1]. Means checked the appropriate boxes to indicate age and sex discrimination on this initial EEOC charge. She no longer claims age discrimination. She was issued a right to sue letter on September 20, 2002. Three months later, having obtained legal representation, Means filed a second EEOC charge on December 23, 2002, alleging both disability discrimination and retaliation. The next day, Means filed the complaint that commenced this case in state court.

A right to sue on this second EEOC charge was issued on February 20, 2003. Means moved the court to amend her complaint on May 20, 2003, to add to and clarify the exhaustion of remedies she asserts were undertaken prior to filing the lawsuit. The court granted her motion on May 22, 2003.

After Dad's terminated her, Means filed for unemployment benefits through the State of Alabama in April 2003. A hearing was

---

[1] Dad's did not receive notice of the fact that Means had filed an EEOC charge against it until after Means' employment had been finally terminated on September 9, 2002.

4

held on August 21, 2003, in front of administrative hearing officer, Brenda Sulzby ("Sulzby"). Sulzby determined that Means was terminated for deliberate misconduct. Accordingly, under Alabama law, Sulzby denied Means unemployment benefits. Means did not appeal Sulzby's findings or conclusions.

*Analysis*

The court must determine whether Dad's has carried its burden of establishing that there are no issues of fact requiring jury resolution and that Dad's is entitled to judgment as a matter of law. According to Rule 56, F.R.Civ.P., summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In deciding a summary judgment motion, the court views all the evidence and any reasonable factual inferences in the light most favorable to the nonmoving party. *Lowe's Home Centers, Inc. v. Olin Corp.*, 313 F.3d 1307, 1310 (11th Cir. 2002). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and demonstrate specific facts showing that there is a genuine issue for trial with regard to those dispositive matters for which it carries the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

*MEANS' ELIGIBILITY TO PURSUE ADA AND TITLE VII CLAIMS*

As a preliminary matter, Dad's argues that Means is not eligible to pursue any of her claims because she has "unequivocally" claimed that she was a partner of Dad's and not an employee.[2] Def. Summ. Judg. Mem., p. 40; see 42 U.S.C. § 12111(4), 12112(a). For two reasons, this argument fails. First, viewing the evidence in the light most favorable to Means, she does not unequivocally claim that she was a Dad's partner during the relevant period of employment. Decl. Of Connie Means ¶ 10. Second, even to the extent that Means did or does think that she was or is a partner, her belief and assertions do not make it so for purposes of ADA eligibility. The relevant inquiry is whether Means actually was an employee or was a partner at the time of the alleged ADA violations, not whether Means thought she was a partner or even stated that she was a partner. See *Hishon v. King & Spalding*, 467 U.S. 69, 80 n.2 (1984), Powell, J. *concurring*.

Viewing the facts in the light most favorable to Means, she never shared in profits or managerial authority over the business, nor did she have any written manifestation of an ownership interest in the business. As stated, Dad's argues that because Means has at various times said that she was a partner, this court should find her ineligible to pursue either of her claims because she is trying to "manipulate the system." Def. Reply Mem. p. 21. Dad's presents

---

[2] Dad's also claims that Means is ineligible to pursue her Title VII claims as a "partner." This argument fails equally in the Title VII context for the same reasons discussed below.

no authority to justify this result, and this court declines to extend the doctrine of judicial estoppel to extinguish Means' claims on account of her prior inconsistent statements as to her employment relationship with Dad's.

Next, Dad's argues that Means' ADA claims are not properly before the court because they are beyond the scope of the first EEOC charge she filed in September 2002. This argument ignores the procedural effect of this court's order granting Means' motion to amend her complaint on May 22, 2003. The effect of the amended complaint is to cure any defect with regard to the timing of Means' December 23, 2002 EEOC charge as a prerequisite to bringing suit for Dad's alleged violations of the ADA.

Moreover, even if Means did not automatically satisfy the exhaustion of remedies requirement by amending her complaint, her second EEOC charge is within the boundaries of amendment that relate back to the date of the original charge. *See Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985); 29 C.F.R. § 1601.12(b) ("charge may be amended...to...<u>amplify</u> allegations"). At the very least, there is a genuine issue as to whether Means intended her first charge to include complaints about disability discrimination. "ADA" sounds so much like "ADEA" to the ear, whether the person has a hearing loss or not. Accordingly, the court cannot disallow the ADA claims at this stage based on Dad's self-serving assertion that the second charge was separate and "independent." Def. Reply Mem.

p. 23.

COLLATERAL ESTOPPEL

As a final effort to avert an adjudication on the merits, Dad's argues that the doctrine of collateral estoppel applies to foreclose plaintiff. Def. Reply Memo p. 23. This argument is plainly, unambiguously, wrong. See Univ. of Tenn. v. Elliott, 478 U.S. 788, 796 (concluding that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims"); Mitchell v. Humana Hospital-Shoals, 942 F.2d 1581, 1583, n.1 (11th Cir. 1991) (noting that "claim preclusion has no bearing upon" a Title VII claim based on a state court's decision in an earlier unemployment compensation case). Dad's raises a line of cases that stand for the narrow proposition that a state agency hearing can have preclusive effect on issues actually litigated therein. See Wal-Mart Stores, Inc. v. Smitherman, 743 So.2d 442, 448 (Ala. 1999); Wal-Mart Stores, Inc. v. Hepp, 2003 WL 22753164 *6 (Ala. 2003). Both of these Wal-Mart decisions dealt with a subsequent <u>state law</u> cause of action for retaliatory discharge, and <u>not</u> ADA or Title VII claims.

In <u>Elliott</u>, the Supreme Court held that Congress did not intend unreviewed state administrative proceedings to carry preclusive effect in Title VII claims. 478 U.S. at 796. The Court based its conclusion in part on the language of 42 U.S.C. § 2000e-5(b), which instructs the EEOC to give "substantial weight to final

findings" of state authorities under state or local discrimination laws. *Id.* at 795. Based on this language, the Court reasoned that "it would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." *Id.* Thus, *Elliott* stands for the proposition that unreviewed state unemployment hearing findings are not entitled to preclusive effect in an action under Title VII. If this court did not understand the limitation on the preclusive effect of state administrative proceedings in federal employment discrimination cases except for those brought under 42 U.S.C. § 1981 or 1983, it learned the hard way in *Bishop v. Birmingham*, 361 F.3d 607, 610 (11th Cir. 2004).

This court agrees with the reasoning of the Seventh Circuit in *Pernice v. City of Chicago*, 237 F.3d 783 (7th Cir. 2001). In *Pernice*, using the same language from *Elliott* quoted above, the court noted that "because...the ADA incorporates the same deferral procedures, 42 U.S.C. § 12117, *Elliott's* reasoning applies equally to ADA cases." *Id.* at 787, n. 5. Therefore, common law collateral estoppel has no application in this case where an unreviewed unemployment compensation decision preceded federal causes of action for disability discrimination under the ADA and sex discrimination under Title VII.[3]

---

[3] Dad's cites the eleventh circuit's decision in *Mitchell*, 942 F.2d at 1582-83, for the proposition that a federal court in a Title VII case "is to accord a prior state proceeding or judgment the same preclusive effect as

9

*ADA CLAIMS*

As for the merits of Means' claims under the ADA, there are genuine issues of material fact that call for jury resolution. The ADA provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a) (1991).

To establish a *prima facie* case of disability discrimination, Means must establish that she is 1) disabled, 2) a qualified individual, and 3) was subjected to unlawful discrimination because of her disability. *Lowe v. Alabama Power Co.*, 244 F.3d 1305, 1307 (11th Cir. 2001).

Dad's contends, as its first defense, that Means is not a "qualified individual with a disability." *Id.* Essentially, Dad's argues that Means' hearing loss is not a disability under the ADA and that she was not qualified for her manager-in-training position. Whether either or both of Dad's arguments proves true is a matter for trial. Means worked as a restaurant manager or assistant manager for over a decade before hiring on with Dad's.

---

would courts of the state issuing the judgment." Def. Reply Mem. p. 28-29. This statement of the rule from *Mitchell* glazes over a critical distinction, namely that such preclusive effect applies to a "prior state court judgment." 942 F.2d at 1582-83. The decision of Hearing Officer Sulzby in this case is not a state court judgment, and Dad's misstatement of the rule in *Mitchell* therefore does not change the conclusion that collateral estoppel does not apply.

Also, Means' medical records and testimony allow the inference that Means is substantially limited in her major life activity of hearing. Moreover, certain statements made by Divine and the declarations of Means' former co-workers support the inference that Means was perceived as having a disability. 42 U.S.C. § 12102(2). Thus, Means has presented enough evidence to create a material issue under Rule 56, F.R.Civ.P., as to her qualification and as to her disability.

A closer question is whether Means has satisfied her burden and created a genuine issue for trial as to whether any unlawful discrimination took place. To establish a violation, Means must show that Dad's terminated her employment or refused her a reasonable accommodation "because of" her disability. 42 U.S.C. § 12112(a). The record is replete with evidence that Dad's fired Means *because* she repeatedly failed to comprehend or retain training protocols that were conveyed to her. There is a disconnect between this evidence and Means' contention that Dad's fired her because of her hearing disability. But, viewing all the evidence in the light most favorable to Means, there is, though very thin, enough evidence that Means' hearing problem - actual or perceived - motivated her employer to fire her.

As an additional theory, Means claims that Dad's discriminated against her by refusing the reasonable accommodation of repeated instructions when she failed to hear or comprehend. Means' sworn

declaration states that she requested such an accommodation. The deposition testimony of Divine concedes that he grew tired of repeating things to her. Viewed in the light most favorable to Means, there is sufficient evidence to create an interesting issue for trial as to whether Means was entitled to repeated instructions as a reasonable accommodation, as if there were not enough issues already.

Means also asserts a hostile environment harassment claim under the ADA. *See Bryant v. Compass Bank*, 1996 WL 529214 *5 (N.D. Ala.) (noting that several courts have agreed a hostile environment theory is actionable under the ADA). To decide whether this claim survives summary judgment, the court must consider the frequency and severity of the alleged conduct, whether the conduct was threatening or humiliating, and whether the conduct reasonably interfered with Means' work performance. *Id.; Edwards v. Wallace Community College*, 49 F.3d 1517, 1521-22 (11th Cir. 1995). The alleged harassment must be pervasive enough that a reasonable person would find the environment abusive. *Id.* Further, Means must demonstrate a causal relationship between the alleged harassment and her disability. Whether Means can get by a Rule 50, F.R.Civ.P., motion on this difficult issue remains to be seen, but she has created a genuine issue for trial as to whether the various abusive and hostile comments that Divine allegedly made to her were related to her disability and created an environment that a

reasonable person would find to be abusive. The Rule 56 standard has been met.

*TITLE VII CLAIMS*

As for Means' gender discrimination claims under Title VII, she alleges that 1) Divine terminated her based on her sex, and 2) she was subjected to a hostile work environment based on her gender. The question before the court on the Title VII claims is whether Means has presented enough evidence to create an issue for trial under either or both of her theories.

Means has woefully failed to create a genuine issue of fact that she was terminated because she is female. Viewing the evidence in the light most favorable to plaintiff, it appears that Divine fired her because she did not retain training information and because he was irritated with her due to her hearing and comprehension problems. There is no substantial evidence that her termination had anything to do with her gender. To allow her to proceed on this theory would only help Dad's, and Dad's does not want the court to help it in such a way.

A *prima facie* case under Title VII for gender discrimination based on circumstantial evidence includes the following elements: 1) that plaintiff belongs to a protected class; 2) that plaintiff was qualified for the position; 3) that plaintiff suffered an adverse action based on her sex; and 4) that plaintiff was replaced by a person outside the protected class or was treated less

favorably than a similarly situated individual outside the class[4]. *Maynard v. Board of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003). While Means is certainly in a protected class and there is at least a genuine issue as to her qualification for the position, there is very little evidence to tie her termination to her gender, and none that she was replaced by a person outside the class or treated less favorably on account of her gender than another individual outside the class.

Regarding the fourth element, replacement by someone outside the class, Means asserts in her brief that a male employee, Tim Smith, "clearly replaced" her upon her termination. Pl. Mem. p. 51. Neither this unsworn hearsay statement, nor the evidence that Smith was seen wearing a 'white shirt' like managers typically wear, is sufficient to create a genuine issue on the question whether he replaced Means. Means also claims that other males who were similarly situated were treated more favorably than her. She provides no specifics, however, and chooses instead to rely on various derogatory statements that Divine allegedly made about women. *See Mendoza*, 342 F.3d at 1289-90 (requiring circumstantial

---

[4] Means asserts that "Divine's remarks towards Means that she was a 'stubborn woman' and that she had a 'problem with men' constitute direct evidence." These and other comments that Divine allegedly made do imply that he has a "negative attitude toward women." Pl. Mem. p. 50. But, these comments, even taken in the light most favorable to Means, do not rise to the level of direct evidence that Means was terminated on account of her gender. *See Maynard*, 342 F.3d at 1289 ("[d]irect evidence is evidence, which if believed, proves existence of the fact in issue without inference or presumption"); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1987).

comparisons between plaintiff and specific individuals outside protected class). This evidence does not create a genuine issue of fact that Means was treated less favorably than any similarly situated male or that Means was replaced by a male. The court holds that Means' unlawful termination claim cannot proceed. Summary judgment shall be entered against Means on this claim.

Means also alleges that she was subjected to a hostile work environment in violation of Title VII because of her sex. The hostile and abusive statements toward women that Divine allegedly made on a regular basis do provide sufficient evidence to create a genuine issue for trial whether Dad's created a sexually hostile environment toward women. Dad's only real argument to the contrary is that the declarations of various former employees detailing the derogatory comments made by Divine are inadmissible and/or irrelevant due to their timing. This argument fails because the court has already held in its order dated April 1, 2004, that the declarations may be considered on summary judgment. Further, just because Divine made the derogatory statements prior to Means' second term of employment does not make the statements irrelevant within the meaning of Rule 401, F.R.E. Accordingly, summary judgment is inappropriate on Means' Title VII hostile work environment claim.

*RETALIATION CLAIMS*

Means also alleges that Dad's violated the ADA and Title VII

by terminating her employment after she complained of Divine's disability and gender discrimination. Pl. Mem. p. 57. Both the ADA and Title VII prohibit retaliation. 42 U.S.C. § 12203; 42 U.S.C. § 2000e-3(a). The ADA's retaliation provision, which is similar to the retaliation provision under Title VII, provides in relevant part as follows:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter. § 12203.

Means argues that she opposed Dad's discriminatory practices verbally by complaining and by calling the May 2002 meeting to voice such complaints. Means points to no specific evidence, however, that she opposed practices forbidden by the ADA or by Title VII. Simply complaining enigmatically does not create a genuine issue of fact upon which her retaliation claim can proceed.

To make out a *prima facie* retaliation case, a plaintiff must show that she engaged in statutorily protected expression, that she was the victim of some adverse employment action, and a causal link between the expression and the adverse action. *Griffin v. GTE Florida, Inc.*, 182 F.3d 1279 (11th Cir. 1999). Means' argument is not evidence of her protected expression because she fails to point to any specific time that she complained of disability or gender discrimination. She does point to evidence that she addressed her "hearing, or lack of hearing" and "comments that he'd made" about her to other employees at the May 2002 meeting, but these vague and

16

conclusory statements do not create a genuine issue that Means engaged in statutorily protected expression, much less that her termination was connected to this expression. Means. Dep. p. 393. Accordingly, she fails the first element of a prima facie retaliation claim, and this court will grant summary judgment in favor of Dad's on Means' retaliation claims.

*Conclusion*

Because Means has failed to raise a genuine issue of material fact and because Dad's is entitled to judgment as a matter of law on Means' claim for termination in violation of Title VII, summary judgment is appropriate on this claim and is due to be granted.

Because there is no genuine issue of fact and Dad's is entitled to judgment as a matter of law on Means' retaliation claims, summary judgment is due to be granted against Means on her retaliation claims under both the ADA and Title VII.

Because genuine issues of material fact remain as to all other claims, defendant's motion is due to be denied in all other respects.

By separate order entered contemporaneously herewith, defendant Dad's motion will be GRANTED IN PART and DENIED IN PART. Done this 4th day of October, 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE